JEFF A. HARRISON (SBN 151227)
SARA PEZESHKPOUR (SBN 260240)
**THE HARRISON LAW GROUP**
139 Richmond Street
El Segundo, California 90245
Tel: (310) 648-8755
Fax: (310) 648-8734
JHarrison@theharrisonlawgroup.com
SPez@theharrisonlawgroup.com

Attorneys for Plaintiff,
STEWART THOMPSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWART THOMPSON; | ) Case No.: 8:23-cv-01621-JWH-ADS |
| | ) *Hon. John W. Holcomb* |
| Plaintiff, | ) |
| | ) **PLAINTIFF'S OPPOSITION TO** |
| vs. | ) **DEFENDANT'S MOTION TO DISMISS** |
| | ) **OR, IN THE ALTERNATIVE, STRIKE** |
| THE IRVINE COMPANY L.L.C., *et al.*; | ) **PORTIONS OF PLAINTIFF'S FIRST** |
| | ) **AMENDED COMPLAINT** |
| | ) |
| Defendants. | ) Date: October 20, 2023 |
| | ) Time: 9:00 a.m. |
| | ) Courtroom: 9D |
| | ) |
| | ) |
| | ) *Declaration of Sara Pezeshkpour and* |
| | ) *[Proposed] Order submitted concurrently* |
| | ) *herewith* |
| | ) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**I.   BRIEF FACTUAL AND PROCEDURAL OVERVIEW ........................5**

**II.   ARGUMENT ...................................................................................7**

A.   Legal Standard........................................................................7

B.   Relief Available Under the Unruh Act....................................8

C.   Plaintiff Has Sufficiently Stated a Claim for Damages Under the Unruh Act....................................................................................9

D.   Plaintiff Has Sufficiently Stated a Claim for Injunctive Relief Under the Unruh Act................................................................11

   *1.   Injunctive Relief Under the Unruh Act Does Not Require Intentional Conduct ...................................................................11*

   *2.   To the Extent that Intentionality is Required, Plaintiff has Pled Sufficient Facts to Meet that Burden.............................................14*

   *3.   Mandatory Injunctive Relief is an Appropriate and Available Remedy Under the Unruh Act ...................................................15*

E.   Exhibit 1 Should Not Be Stricken Because it is Necessary to Provide Defendant and the Court Fair Notice of All of Plaintiff's Claims ...................................19

**III.   CONCLUSION................................................................................19**

1

# TABLE OF AUTHORITIES

2

**CASES**

3

*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160 ............................7, 14

4

*Bureerong v. Uvawas* 922 F. Supp. 1450 (C.D. Cal. 1996) ...............................7

5

*Conley v. Gibson* 355 U.S. 41 (1957)...................................................................7

6

*Cruz v. Beto* 405 U.S. 319 (1972).......................................................................6

7

*DeSoto v. Yellow Freight Sys., Inc*. 957 F.2d 655 (9th Cir. 1992)...............7, 18

8

*Dosch v. King* (1961) 19 Cal.App.2d 800 .........................................................17

9

*Fantasy, Inc. v. Fogerty* 984 F.2d 1524 (9th Cir. 1993)......................................7

10

*Fortyune v. City of Lomita*  766 F.3d 1098 (9th Cir. 2014) ...............................15

11

*Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*

12

  742 F.3d 414 (9th Cir. 2014) ..........................................................................10

13

*Jankey v. Lee* (2012) 55 Cal.4th 1038 ...............................................................10

14

*Lentini v. Cal. Ctr. for the Arts* 370 F.3d 837 (9th Cir. 2004) ...........................11

15

*Martinez v. Cot n' Wash, Inc.,* (2022) 81 Cal.App.5th 1026 .............................11

16

*Munson v. Del Taco* (2009) 46 Cal.4th 661 ...................................................8, 11

17

*Oliver v. Ralph's Grocery Co.* 654 F.3d 903 (9th Cir. 2011) ...........................18

18

*People v. Hill* (1977) 66 Cal. App.3d 321 .........................................................17

19

*People v. iMergent, Inc.* (2009) 170 Cal.App.4th 333 ......................................17

20

*Retail Clerks International Ass'n Local 1625 v. Schermerhorn*

21

  373 U.S. 746(1963)............................................................................................7

22

*Rutherford v. La Jolla Riviera Apt. House LLC*

23

  2019 U.S. Dist. LEXIS 200618 .......................................................................13

24

*Thurston v. Midvale Corp.* (2019) 39 Cal.App.5th 634 .......................14, *passim*

25

**STATUTES**

26

<u>Federal</u>

27

28 U.S.C. § 12182.............................................................................................12

28

<u>State</u>

Cal. Civ. Code §51.....................................................................................4, 5, 7, 14

Cal. Civ. Code §52................................................................................7, *passim*

Cal. Civ. Code §55.56.....................................................................................8

**OTHER AUTHORITIES**

Stats. 1992, ch. 913.........................................................................................11

1         Defendant THE IRVINE COMPANY L.L.C. ("Defendant") has moved to

2   dismiss or strike portions of the First Amended Complaint ("FAC") of Plaintiff

3   STEWART THOMPSON ("Plaintiff" or "Mr. Thompson") on the basis that (1) the

4   FAC fails to state a claim for damages under the Unruh Act (Cal. Civ. Code §51 *et*

5   *seq.*); and (2) the FAC fails to state a claim for injunctive relief under the Unruh Act.

6   However, Defendant is wrong. Mr. Thompson has pled sufficient facts to show that

7   he is entitled to damages for the difficulty, discomfort, and/or embarrassment he

8   suffered when, on January 29, 2023, he *fell out of his wheelchair* due to barriers to

9   disabled access that he encountered in a crosswalk near Javier's restaurant at the

10  Crystal Cove shopping center, which is owned and operated by Defendant. Further,

11  when the Court draws reasonable inferences in Plaintiff's favor, as it must, Mr.

12  Thompson has pled sufficient facts showing that he is entitled to injunctive relief

13  under the Unruh Act because Defendant's continuing failure to remediate the barriers

14  to wheelchair access at the shopping center, which Defendant has had actual notice of

15  for several months, can be deemed to be intentional. Finally, Defendant's

16  interpretation of the Unruh Act's injunctive relief provision is overly narrow and

17  inconsistent with both the purpose of the statute and with California decisions which

18  have held that affirmative relief is an appropriate remedy to remedy disability

19  discrimination. For these reasons and as explained below, the motion should be

20  denied in its entirety; if the Court is inclined to grant the motion, Plaintiff must be

21  given leave to amend.

22

23  **I.     Brief Factual and Procedural Overview**

24        Mr. Thompson is a wheelchair user who patronized the Crystal Cove shopping

25  center on or around January 29, 2023. (FAC, ¶15). As he wheeled toward Javier's

26  restaurant using the intended pedestrian crosswalk, he fell out of his wheelchair

27  because of significant gaps in the crosswalk caused by deteriorated and worn brick

28  pavers that exceeded ½ inch and that caused his front wheels to get stuck. (FAC, ¶18-

20). Mr. Thompson fell into a curb ramp, and his wheelchair rolled into the vehicular drive aisle. (FAC, ¶20). He was frustrated, distressed, and embarrassed by this experience, which caused him difficulty, discomfort, or embarrassment. (FAC, ¶20-21).

Before filing his complaint, Mr. Thompson, through his attorneys, reached out to Defendant to advise it of the barrier to wheelchair access he personally encountered at the Crystal Cove shopping center and to advise it of other apparent barriers to wheelchair access throughout the shopping center for which he sought injunctive relief. (FAC, ¶24). That letter was sent to Defendant on April 24, 2023. (FAC, ¶24).  On May 11, 2023, counsel of record for Defendant, Gregory Hurley, contacted Plaintiff's counsel and advised that Defendant was "reviewing the allegations." (Declaration of Sara Pezeshkpour, ¶3). Despite repeated attempts by Plaintiff's counsel, there was no further communication from Mr. Hurley, Defendant, or any of its representatives after May 11, 2023. *Id.* Thus, Mr. Thompson filed his complaint in the Superior Court of California for the County of Orange on July 28, 2023.

On August 28, 2023, Defendant removed the case to this Court on the grounds that this Court had federal question jurisdiction because the original complaint sought relief under Title III of the Americans with Disabilities Act ("ADA") as well as under the Unruh Act. On September 5, 2023, Plaintiff filed his FAC, which eliminated his cause of action under Title III of the ADA.  Only one cause of action is asserted in the FAC: a claim for injunctive relief and damages under the Unruh Act (Cal. Civ. Code §51 *et seq.*).

In addition to eliminating his claim for relief under the ADA, the FAC added a list of 47 separate violations of disabled access standards at the shopping center as Exhibit 1. (FAC, ¶22). These violations were identified by Mr. Thompson's accessibility expert, who inspected the shopping center, catalogued the violations, and compiled this list after the litigation commenced. (Pezeshkpour Decl., ¶4). In the

FAC, Plaintiff seeks injunctive relief to have Defendants remediate all barriers to wheelchair access at the shopping center listed in Exhibit 1 so that, when he returns to the shopping center, he is able to fully and equally access and use its amenities. (FAC, ¶22). Unless and until those barriers are remediated, Mr. Thompson will continue to be deterred from patronizing the shopping center in a manner equal to non-disabled customers. (FAC, ¶22).

On September 19, 2023, Plaintiff filed a motion to remand this case to Superior Court on the grounds that because the FAC only includes a claim for relief under California law, there is no federal question jurisdiction and Defendant could not meet its burden of showing why this Court should retain jurisdiction over a single California civil rights claim. (ECF No. 14). That motion is set for hearing on October 20, 2023, the same date as Defendant's motion to dismiss or, in the alternative, strike portions of Plaintiff's FAC.

In an effort to avoid costly and time-consuming motion practice, Plaintiff's counsel contacted Defendant's counsel and asked Defendant's counsel to stipulate to the filing of a Second Amended Complaint ("SAC"), which would have addressed the issues raised in Defendant's motion to dismiss/strike. (Pezeshkpour Decl., ¶5). At the request of Defendant's counsel, Plaintiff's counsel sent Defendant's counsel a copy of the proposed SAC. (*Id.*). However, Defendant did not stipulate to the filing of the SAC, just as it would not stipulate to remand this matter to Superior Court, thus necessitating this opposition, a reply brief, and two hearings on the pending motions. (*Id.*).

## II.    Argument

### A. Legal Standard

Under the well-established standards for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, the court assumes that the allegations of the complaint are true. *Cruz v. Beto,* 405 U.S. 319, 321-22 (1972). The court also draws all reasonable

inferences from the well-pleaded allegations of the complaint in favor of the plaintiff. *Retail Clerks International Ass'n Local 1625 v. Schermerhorn,* 373 U.S. 746, 753 (1963). A complaint may be dismissed for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Further, if the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).

Rule12(f) of the Federal Rules of Civil Procedure allows a court to strike any redundant, immaterial, impertinent, or scandalous matter. This rule helps avoid expenditures of time and money that arise from litigating spurious issues by dispensing with those issues prior to trial. Matter is immaterial where it has no essential or important relationship to the claim for relief being pleaded. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). Generally, motions to strike are disfavored. *Bureerong v. Uvawas,* 922 F. Supp. 1450, 1478 (C.D. Cal. 1996). However, granting a motion to strike lies within the sound discretion of the district court. *Fogerty,* 984 F.2d at 1528.

### B. Relief Available Under the Unruh Act

The Unruh Act (Cal. Civ. Code §51 *et seq*.) is a California civil rights law that is remedial in nature and is intended to be construed liberally to effectuate its purpose of ensuring people with disabilities are afforded full and equal access, as members of the general public, to business establishments. *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 167.  The Unruh Act affords victims of discrimination various types of relief. (*See* Cal. Civ. Code §52, entitled "Actions for damages and other relief for denial of rights").  A violation of Title III of the ADA is a *per se* violation of the Unruh Act. (Cal. Civ. Code §51(f)).

Victims of discrimination can obtain "actual damages, and any amount that

may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto" (Cal. Civ. Code §52(a)).

In construction-related accessibility cases like this one, damages under Civil Code section 52(a) are recoverable only if a violation(s) of a construction-related accessibility standard denied the plaintiff full and equal access on a particular occasion. (Cal. Civ. Code §55.56(a)). This means that the plaintiff must have "personally encountered the violation on a particular occasion" and that the plaintiff "experienced difficulty, discomfort, or embarrassment because of the violation." (*Id.* at subdiv. (b), (c)). A plaintiff who seeks damages under the Unruh Act for violations of the ADA need not plead or prove that the discrimination was intentional. *Munson v. Del Taco* (2009) 46 Cal.4th 661.

Injunctive relief is also available under the Unruh Act. Civil Code section 52(c) provides (emphasis added): "Whenever there is reasonable cause to believe that any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights described in this section, and that conduct is of that nature and is intended to deny the full exercise of those rights… any person aggrieved by the conduct may bring a civil action" that "shall contain… a request for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, *as the complainant deems necessary to ensure the full enjoyment of the rights described in this section.*"

## C. Plaintiff Has Sufficiently Stated a Claim for Damages Under the Unruh Act.

Defendant seems to argue that Mr. Thompson has not sufficiently pled facts to state a claim for damages under the Unruh Act to the extent that his claim for

1   damages is predicated on the barriers identified in Exhibit 1.  Plaintiff generally

2   agrees with Defendant's position because Plaintiff is not seeking damages for every

3   accessibility violation identified in Exhibit 1. Rather, as the FAC makes clear, Exhibit

4   1 is "comprehensive list of disabled access barriers at the Shopping Center for which

5   Mr. Thompson seeks injunctive relief". (FAC, ¶22). Mr. Thompson only seeks

6   damages for the difficulty, discomfort, or embarrassment he suffered on January 29,

7   2023, when he fell out of his wheelchair due to accessibility violations at the

8   shopping center.

9       Specifically, as Defendant acknowledges, Mr. Thompson alleges that on

10  January 29, 2023, he personally encountered gaps in the crosswalk near Javier's

11  restaurant that caused him difficulty, discomfort, or embarrassment and that, in fact,

12  caused him to fall out of his wheelchair, dangerously close to moving vehicles. (FAC,

13  ¶18-21). In other words, Plaintiff has identified (1) the alleged barrier (the crosswalk

14  gaps that exceeded ½ inch, FAC at ¶18-19); (2) the particular occasion on which he

15  encountered that barrier (January 29, 2023, FAC at ¶15); and (3) the difficulty,

16  discomfort, or embarrassment that encountering the barrier caused him (FAC at ¶18,

17  20-21).

18      However, there is one important issue to note. The barrier that Plaintiff

19  personally encountered on January 29, 2023 is catalogued in detail in Exhibit 1, Item

20  14. This barrier was confirmed to exist by Plaintiff's expert, who inspected the

21  shopping center after this lawsuit was initiated. (Pezeshkpour Decl., ¶4). Thus,

22  Exhibit 1 contains important information regarding the precise nature of the barrier

23  Mr. Thompson personally encountered, which is the foundation of his claim for

24  damages. Exhibit 1 *also* contains information regarding the 46 other barriers that

25  exist at the shopping center, for which Mr. Thompson seeks injunctive relief. (FAC,

26  ¶22). As noted above, however, Mr. Thompson is *not* seeking damages for any of the

27  46 barriers identified in Exhibit 1 that he did not personally encounter on a particular

28  occasion.

**D. Plaintiff Has Sufficiently Stated a Claim for Injunctive Relief Under the Unruh Act.**

    1. <u>Injunctive Relief Under the Unruh Act Does Not Require Intentional Conduct</u>

Defendant's argument that Civil Code section 52(c) only allows injunctive relief if Defendant's conduct is intentional is too narrow of an interpretation of the Unruh Act: endorsing Defendant's position would create irreconcilable conflict with other provisions of the statute, with binding precedent, and with the Act's broad remedial purpose.

Civil Code section 52(c) describes what needs to be included in a complaint under the Unruh Act. "[A] person aggrieved by the conduct may bring a civil action in the appropriate court by filing with it a complaint. The complaint shall contain the following…" This provision simply describes what an Unruh Act complaint needs to include, which are (1) a signature of the officer or person aggrieved, (2) the facts pertaining to the conduct, and (3) a request for injunctive relief "as the complainant deems necessary to ensure the full enjoyment of the rights described in this section."

Because a violation of Title III of the ADA is a *per se* violation of the Unruh Act, the Unruh Act can be used to obtain remediation of ADA violations. Civil Code section 52(f); *Jankey v. Lee* (2012) 55 Cal.4th 1038, 1044 [the 1992 amendments to the Unruh Act, which made an ADA violation a *per se* violation of the Unruh Act, were "intended to extend to disabled individuals aggrieved by an ADA violation the full panoply of Unruh Civil Rights Act remedies. These include injunctive relief, actual damages (and in some cases as much as treble damages), and a minimum statutory award of $ 4,000 per violation."].

In *Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.,* 742 F.3d 414 (9th Cir. 2014) ("*CNN*"), the Ninth Circuit Court of Appeals considered whether a party seeking relief for violations of the Unruh Act must plead and prove intentional discrimination. There, the Greater Los Angeles Agency on Deafness ("GLAD") sued

CNN, seeking to enjoin CNN to caption its broadcasts to afford full and equal access to deaf and hard of hearing viewers. The Ninth Circuit held that, in most circumstances, intentional discrimination is needed to sustain an Unruh Act claim, typically in the form of "affirmative, willful misconduct." *CNN,* 742 F.3d at 426. However, the court distinguished cases where a party sought relief under the Unruh Act for ADA violations: "to establish a violation of the Unruh Act independent of a claim under the Americans with Disabilities Act, GLAD must 'plead and prove intentional discrimination in public accommodations in violation of the terms of the Act.'" *Id.* at 425, citing *Munson,* 46 Cal.4th at 661. The Ninth Circuit Court of Appeals therefore distinguished Unruh Act claims which are *not* based on ADA violations – for which intentional discrimination must be pled and proven – from Unruh Act claims which *are* based on ADA violations, like Mr. Thompson's, which do not require pleading and proving intentional discrimination.

This interpretation is also consistent with the Legislative intent in amending the Unruh Act in 1992 to make ADA violations *per se* violations of the Act. The general intent of the legislation was expressed in an uncodified section: "It is the intent of the Legislature in enacting this Act to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990… and to retain California law when it provides more protection for individuals with disabilities than the Americans with Disabilities Act of 1990." (Stats. 1992, ch. 913, §1, p. 4282). Finding that allegations and/or proof of intent is required to obtain injunctive relief under the Act runs afoul of the Legislative intent, which was to strengthen California law where it was weaker than the ADA. Since the ADA does *not* require a showing of intent (*Lentini v. Cal. Ctr. for the Arts,* 370 F.3d 837, 847 (9th Cir. 2004)), strengthening California law would mean eliminating any intent requirement when an Unruh Act violation is predicated on an ADA violation. *See also Martinez v. Cot n' Wash, Inc.* (2022) 81 Cal.App.5th 1026, 1036 ("Unless an Unruh Act claim is based on an ADA violation, the act requires a claimant to prove intentional discrimination").

In this case, Mr. Thompson is seeking injunctive relief under the Unruh Act for violations of the ADA at the shopping center, both the ones he personally encountered in January 2023, and the ones identified by his expert and listed in Exhibit 1. (FAC, ¶¶22-23, 25, 31). Mr. Thompson has sought an injunction "ordering Defendants to alter the Shopping Center to make it readily accessible to and usable by individuals with disabilities". (FAC, Prayer for Relief, ¶1). He has met the statutory requirement of Civil Code section 52(c)(3) by including a request for injunctive relief that he deems necessary to ensure the full enjoyment of his right to full and equal access to Defendant's shopping center.

Because Civil Code section 52(c) is clear as to what a plaintiff must plead, and because the statute is silent as to a requirement to plead intentional discrimination, Mr. Thompson must not plead intentional discrimination in an Unruh Act complaint seeking injunctive relief. Defendant heavily relies on the first sentence of section 52(c) to contend that injunctive relief requires intentional conduct. However, the first sentence of section 52(c) describes the liable party, and does not require any intentional act. Section 52(c) states: "Whenever there is reasonable cause to believe that any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights described in this section…" In other words, being discriminated against is the triggering event, and failing to remove a barrier is sufficient to invoke the remedy of injunctive relief. The subsequent clause, in which "intended" is used, refers to the conduct rather than the individual: "and that conduct is of that nature and is intended to deny the full exercise of those rights." Actions do not have motivations or feelings, but they do have consequences. Under the ADA, failing to take actions is an act of discrimination. *See, e.g.,* 28 U.S.C. § 12182(b)(2)(i)-(v). The existence of barriers in the face of the law is imputed with intent to discriminate. *Id.* Therefore, a showing of intent is not required to seek relief under the Unruh Act, and Defendant's motion should be denied.

2. <u>To the Extent that Intentionality is Required, Plaintiff has Pled Sufficient Facts to Meet that Burden</u>

Even if this Court concludes that the Unruh Act requires a plaintiff to plead and prove that Defendant's discrimination was intentional to seek injunctive relief, Mr. Thompson has done so. In the FAC, Mr. Thompson alleges that he gave Defendant notice of his access-related concerns on or around April 24, 2023; that Defendant's counsel indicated he had received and reviewed the allegations of that letter; that Defendant has been on notice of the barriers to wheelchair access at the shopping center since at least April 24, 2023; and that Defendant has done nothing to address those barriers for more than five months, thus necessitating an injunction from this Court. (FAC, ¶24-25; Prayer for Relief, ¶1). When reasonable inferences are drawn from these allegations, it is clear that Mr. Thompson contends that Defendant has intentionally violated the Unruh Act by "denying, or aiding or inciting the denial of, Plaintiff's rights to full and equal use of" the shopping center because Defendant has known of the barriers to wheelchair access at the shopping center for five months and has not done anything to address them.

Intentional conduct need not be motivated by animus or personal prejudice, but where – as here – the plaintiff gave Defendant pre-litigation notice of the barriers to wheelchair access at the shopping center (even though no statute requires pre-litigation notice), where the Defendant acknowledged receipt of the notice and indicated it was "reviewing the allegations," and where Defendant has taken no steps to remediate the barriers after more than five months, a fact-finder can reasonably conclude that Defendant's failure to act is intentional. *Rutherford v. La Jolla Riviera Apt. House LLC* 2019 U.S. Dist. LEXIS 200618, at \*5 ("Although the words 'intentional,' 'willful,' or the like do not appear in the Complaint, Plaintiff nonetheless pleads a plausible claim for intentional discrimination.").

Additionally, injunctive relief is a remedy, not a cause of action; it would be premature to strike or dismiss said remedy at this time. The parties should be

1  permitted to conduct discovery to flesh out the intentionality of Defendant's conduct
2  and then it is the province of the fact-finder to conclude whether Defendant's conduct
3  is or is not intentional. Further, at this time, the specific parameters of any injunction
4  are unknown at this early stage of the litigation. At the remedy stage, the Court will
5  have a proposed order for injunctive relief before it for evaluation and can then
6  determine whether or not to grant injunctive relief and if so, what such an order will
7  entail.

8

9      3.  Mandatory Injunctive Relief is an Appropriate and Available Remedy
10         Under the Unruh Act

11      The Unruh Act is to be construed broadly in favor of affording whatever relief
12  is needed to eradicate discrimination by California businesses. *Angelucci,* 41 Cal.4th
13  at 167. The Act, at Civil Code section 52(c)(3), states that a preventive injunction
14  may be requested "as the complainant deems necessary to ensure the full enjoyment
15  of the rights described in this section." In other words, to further the Unruh Act's
16  remedial purpose, courts can craft and issue mandatory injunctions to prevent
17  defendants from continuing to violate the Act, even if such an injunction would
18  require a defendant to take affirmative action (like remediating architectural barriers
19  to wheelchair access).

20      In *Thurston v. Midvale Corp.* (2019) 39 Cal.App.5th 634, a California Court of
21  Appeal approved of injunctive relief under the Unruh Act that mandated a defendant
22  to comply with the ADA's website accessibility guidelines ("WCAG"). The *Thurston*
23  court found such mandatory injunctive relief to be necessary and appropriate to
24  ensure the full and enjoyment of the defendant's website for persons with disabilities.
25  Further, the court confirmed that this injunctive relief was proper under the theory
26  that a "violation of the federal American with Disabilities Act of 1990 [(ADA)] shall
27  also constitute a violation of this section." *See* Cal. Civ. Code § 51(f); *Thurston,* 39
28  Cal.App. at 637 ("It was under subdivision (f) that Thurston brought her lawsuit.").

The court in *Thurston* explicitly held that a court can order compliance with the ADA's website accessibility guidelines as an equitable remedy "if, after discovery, the website and app fail to satisfy the ADA." *Id.* at 648. The following excerpt from *Thurston* is helpful:

> Appellant contends the **injunction's mandate to comply** with WCAG 2.0 guidelines 'implies that [appellant] should have known such compliance was legally required.' We think the more obvious implication is that the trial court determined appellant could not or would not redesign its website to comply with ADA standards without specific guidance, and so it selected what it believed to be a widely used technical standard to provide the needed guidance.

> Relying on *Fortyune v. City of Lomita* 766 F.3d 1098 (9th Cir. 2014), appellant suggests the Ninth Circuit has 'noted that due process constrains remedies that [maybe] imposed for lack of access, and cautioned that in crafting a remedy, a court must 'consider carefully' what level of accessibility the defendant should have known was legally required.' To the extent appellant relies on *Fortyune* to show due process prohibited the court from ordering it to comply with WCAG 2.0 guidelines, recent and more specific Ninth Circuit case law belies that reliance. In *Domino's*, after reviewing the statute and DOJ pronouncements on the statute, the Ninth Circuit made clear that 'at least since 1996, Domino's has been on notice that its online offerings must effectively communicate with its disabled customers and facilitate 'full and equal enjoyment' of Domino's goods and services.' (*Domino's, supra* , 913 F.3d at p. 907.) The same can be said of appellant and The Whisper Lounge. **A court 'can order compliance with WCAG 2.0 as an equitable remedy if, after discovery, the website and app fail to satisfy the ADA.'** (Ibid.)

> Appellant has not cited any cases discussing the requirements for an injunction under the Unruh Civil Rights Act and suggests no such case exists. If that is true, appellant makes no argument for what those requirements should be: appellant does not discuss the language, legislative intent or purpose of the Unruh Civil Rights Act or Civil Code section 52, which authorizes 'any person aggrieved' to seek an injunction. Appellant does not address our Supreme Court's consistent holding that 'the Act must be construed liberally in order to carry out its purpose' or the fact that '[i]n light of its broad preventative and remedial purposes, courts have recognized that '[s]tanding under the Unruh Civil Rights Act is broad.' … Appellant's only reference to section 52 takes a short phrase out of context. **Appellant argues that "preventative relief cannot be 'deemed necessary' to ensure [Thurston] is afforded a right of**

**access to the restaurant. In fact, the language of section 52, subdivision (c)(3) authorizes a complainant to seek preventative relief 'as the complainant deems necessary to ensure the full enjoyment of the rights described in this section.' Thus, appellant has failed to demonstrate error.** (*City of Santa Maria v. Adam, supra*, 211 Cal.App.4th at pp. 286–287, 149 Cal.Rptr.3d 491; *Opdyk v. California Horse Racing Bd., supra*, 34 Cal.App.4th at p. 1830, fn. 4, 41 Cal.Rptr.2d 263 ; *In re Marriage of Falcone & Fyke, supra*, 164 Cal.App.4th at p. 830, 79 Cal.Rptr.3d 588.)

…

Similarly, we find the trial court's injunction mandating compliance with WCAG 2.0 efficient and well within the court's competence to administer. The injunction is neither overbroad, uncertain, nor unconstitutional.

*Thurston v. Midvale Corp.*, 39 Cal.App. 5th 634, 652 (2019). (emphasis added).

*Thurston* upheld mandatory injunctive relief requiring a defendant to make its website accessible: here, Plaintiff is seeking mandatory injunctive relief requiring Defendant to make its shopping center accessible. In *Thurston*, the plaintiff, a blind individual, alleged the website maintained by the defendant contained barriers to access in violation of the ADA and the Unruh Act. The *Thurston* court ordered the defendant to alter its website to comply with the relevant web standards to ensure blind individuals could access the website and its content. Plaintiff's case and legal issues are nearly identical to *Thurston*. The only way to prevent the future harm is to alter, modify and repair the shopping center to comply with the relevant ADA standards and guidelines, which is the exact type of injunction that the *Thurston* court found to be necessary, appropriate, and not overbroad, uncertain or unconstitutional to ensure the enjoyment and right of access guaranteed under Unruh Act.

For preventative relief, courts sometimes look at whether an injunction has the effect of preserving the status quo. A prohibitory injunction generally preserves the status quo, while a mandatory injunction has the effect of "compelling the performance of a substantive act and necessarily contemplates a change in the relative

1   rights of the parties at the time the injunction is granted." *Dosch v. King,* (1961) 19

2   Cal.App.2d 800, 804 . But this often prompts the question whether the injunction

3   compels a substantive act and necessarily contemplates a change in the status quo.

4   For example, an injunction that prohibited a defendant from using the term

5   "accounting" in its name was held to be prohibitory, even though it compelled the

6   defendant to remove the word "accounting" from its business signs and advertising.

7   *People v. Hill* (1977) 66 Cal. App.3d 321, 331. In finding that the injunction in *Hill*

8   was prohibitory, the court defined the status quo as "the last actual peaceable,

9   uncontestable status which preceded the pending controversy." *Id*. When a court

10  defines the status quo as the last uncontestable status, it may often find that an

11  injunction seeking to "preserve" this status quo is prohibitory, even when it requires

12  the defendant to engage in a substantive or affirmative act, such as removing or

13  replacing signs, as in *Hill.* In *People v. iMergent, Inc.*, the court held that an

14  injunction prohibiting the defendant from selling its web-based training programs

15  unless it provided certain disclosures was prohibitory, even though the injunction

16  effectively compelled the defendant to make the disclosures. *People v. iMergent, Inc.*

17  (2009) 170 Cal.App.4th 333, 343.

18      Here, the preventative relief is permitted where it is necessary to ensure the full

19  and equal

20  enjoyment of disabled persons. The "status quo" is an accessible website as required

21  by law and the "preventative" relief is to prevent the business establishment from

22  avoiding its obligation to remove barriers. Like the injunction ordered in *Thurston v.*

23  *Midvale*, the relief sought by Plaintiff to repair the property to comply with the

24  relevant ADA standards and guidelines is consistent with the goals of the Unruh Act

25  of full and equal enjoyment and permitted as preventative relief. Indeed, even section

26  52(c)(3) states that a preventive injunction may be requested (and presumptively

27  issued if the need established) "as the complainant deems necessary to ensure the full

28  enjoyment of the rights described in this section."

### E. Exhibit 1 Should Not Be Stricken Because it is Necessary to Provide Defendant and the Court Fair Notice of All of Plaintiff's Claims

As Defendant notes, a plaintiff in an accessibility case like this one must provide the defendant "fair notice" of its claims, including its claims for injunctive relief. *Oliver v. Ralph's Grocery Co.* 654 F.3d 903, 909 (9th Cir. 2011). Mr. Thompson has tried to accomplish this by including a list of all alleged ADA violations at the shopping center for which he seeks injunctive relief, which is attached as Exhibit 1 to the FAC. Contrary to Defendant's assertion, *Oliver* does not require a plaintiff to include *in the body of the complaint* each barrier for which he seeks injunctive relief (versus including them as an exhibit). Nor does *Oliver* require a plaintiff to indicate, at the pleading stage, specifically which federal or state accessibility standard was violated. What *Oliver* requires is for a plaintiff to give the defendant enough information to allow the defendant to understand "what the claim is and the grounds upon which it rests… Where the claim is one of discrimination under the Americans with Disabilities Act due to the presence of architectural barriers at a place of public accommodation, the relevant 'grounds' are the allegedly non-compliant architectural features at the facility. Thus, in order for the complaint to provide fair notice to the defendant, each such feature must be alleged in the complaint." *Id.* at 909. Thus, Exhibit 1 should not be stricken simply because Defendant takes issue with it being an attachment or not providing the sort of detailed information that is neither required by *Oliver* nor any other authority.

### III.   Conclusion

Defendant has failed to meet its burden of showing that the FAC should be dismissed in its entirety and that portions thereof should be stricken. Thus, the motion should be denied. In the alternative, because Defendant has not shown that the deficiencies of the complaint cannot be cured by amendment, leave to amend should be granted if this Court grants Defendant's motion. *DeSoto,* 957 F.2d at 658.

1

Dated: September 29, 2023                    **THE HARRISON LAW GROUP**

2

3                                            /s/ Sara Pezeshkpour

4                                            JEFF A. HARRISON

5                                            SARA PEZESHKPOUR
                                             Attorneys for Plaintiff,
6                                            STEWART THOMPSON

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28